**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**NATHAN BEMENT,**

        **Plaintiff,**

**v.**                          **Case No: 6:24-cv-873-PGB-EJK**

**UNITED AIRLINES, INC.,**

        **Defendant.**

                                  /

**ORDER**

This cause is before the Court upon Defendant United Airlines, Inc.'s ("**Defendant**" or "**United**") Motion to Transfer Venue. (Doc. 13 (the "**Motion**")). Plaintiff Nathan Bement ("**Plaintiff**") filed a response in opposition (Doc. 16 (the "**Response**")). Upon consideration, the Motion is due to be granted.

**I.    BACKGROUND**

United is an international airline with its principal place of business in Chicago, Illinois. (Doc. 1, ¶ 7). Plaintiff worked as a Sheet Metal Line Technician for United at the Orlando International Airport in Orlando, Florida up until his termination on December 7, 2021. (*Id.* ¶¶ 6, 26).

In response to the Coronavirus disease ("**COVID-19**") pandemic, United notified its employees on August 6, 2021, that it was implementing a COVID-19 Vaccination Policy (Doc. 1-1 (the "**COVID-19 Policy**")). (*Id.* ¶ 10). Pursuant to the COVID-19 Policy, United announced that it would require all United employees to

receive a COVID-19 vaccine within five weeks of a vaccine being granted full approval by the U.S. Food and Drug Administration ("**FDA**") or within five weeks of September 20, 2021, which ever came first. (*Id.*).

On August 23, 2021, in light of the FDA approving the COVID-19 vaccines, United updated its COVID-19 Policy and required employees to be vaccinated and to submit a vaccination record by September 27, 2021. (*Id.* ¶ 16; Doc. 1-2). United also required employees to submit their requests for accommodations by August 31, 2021. (Doc. 1, ¶ 17). However, Plaintiff alleges that this "deadline was at no time announced to [him] nor published in conjunction with United's notifications of its Policy in August 2021." (*Id.*).

On September 23, 2021, Plaintiff submitted his "religious objections to taking the COVID-19 vaccinations." (*Id.* ¶ 18). United denied Plaintiff's objections "as untimely and refused to consider it further." (*Id.*; Doc. 1-3). On November 15, 2021, according to Plaintiff, United conducted a fact-finding meeting and determined that Plaintiff was noncompliant with the COVID-19 Policy because he did not upload proof of a COVID-19 vaccination, nor did he obtain an exemption based upon a reasonable accommodation. (Doc. 1, ¶ 20). Then, on November 25, 2021, Plaintiff again submitted a request for an exemption from the COVID-19 Policy on religious grounds. (*Id.* ¶ 22). United again denied Plaintiff's request as untimely. (*Id.* ¶ 23; Doc. 1-5).

Ultimately, because Plaintiff failed to comply with the COVID-19 Policy, United terminated his employment on or about December 7, 2021. (Doc. 1, ¶ 26–

2

27). Accordingly, on or about January 4, 2022, Plaintiff filed a claim with the Equal Employment Opportunity Commission ("**EEOC**") against United for discrimination. (*Id.* ¶ 32). In response, the EEOC provided Plaintiff a Notice of Right to Sue on February 8, 2024. (*Id.* ¶ 33).

Plaintiff thus initiated this action against United on May 8, 2024, in the Middle District of Florida. (Doc. 1). Plaintiff alleges claims for discrimination and retaliation in violation of the Florida Civil Rights Act ("**FCRA**"), Florida Statutes §§ 760.07, 760.10, 760.10(7), and Title VII of the Civil Rights Act of 1964 ("**Title VII**"), 42 U.S.C. § 2000e. (*See generally id.*).

On July 26, 2024, United filed a Motion to Transfer Venue, and Plaintiff timely responded in opposition. (Docs. 13, 16). The matter is thus ripe for review.

## II.  STANDARD OF REVIEW

A motion to transfer venue within the federal court system is governed by 28 U.S.C. § 1404(a). *See Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tx.*, 571 U.S. 49, 57–58 (2013). Under § 1404(a), a district court may transfer a civil action "[f]or the convenience of the parties and witnesses, [and] in the interest of justice . . . to any district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). When applying this statute, courts undertake a two-step analysis. *Nat'l Tr. Ins. Co. v. Pa. Nat'l Mut. Cas. Ins. Co.*, 223 F. Supp. 2d 1236, 1241–42 (M.D. Fla. 2016) (citations omitted). First, the court must determine "whether the case could have been filed in the proposed district." *Id.* Second, the court must assess "whether the transfer

3

would be for the convenience of the parties and witnesses and in the interest of justice." *Id.* (quoting *Eye Care Int'l, Inc. v. Underhill,* 119 F. Supp. 2d 1313, 1318 (M.D. Fla. 2000)). In analyzing the second prong, courts in the Eleventh Circuit traditionally consider the following factors:

> 1) the convenience of the witnesses; 2) the location of relevant documents and the ease of access to sources of proof; 3) the convenience of the parties; 4) the locus of operative facts; 5) the availability of process to compel unwilling witnesses; 6) the relative means of the parties; 7) a forum's familiarity with the governing law; 8) the weight accorded a plaintiff's choice of forum; and 9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005). A court will not disturb a plaintiff's choice of venue unless the movant can demonstrate that the choice is outweighed by other considerations. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). Therefore, the movant carries the burden of establishing that the case should be transferred to the suggested venue in the interests of convenience and justice. *See In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989). Ultimately, the decision to transfer a matter is within the sound discretion of the district court. *Roofing & Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc.*, 689 F.2d 982, 985 (11th Cir. 1982).

### III. DISCUSSION

United moves for a transfer of this case to the Northern District of Illinois because "a critical mass of cases related to Defendant's COVID-19 vaccine mandate have been transferred to the Northern District of Illinois, and because the relevant factors weigh in favor of transfer." (Doc. 13, p. 1). Plaintiff opposes a transfer of this

4

case and argues that United cannot satisfy its "burden of showing its interests strongly favor transfer." (Doc. 16, p. 4). For the reasons set forth below, the Court finds that United has met its burden in establishing that the case should be transferred to the Northern District of Illinois. *See In re Ricoh Corp.*, 870 F.2d at 573.

### A. Sufficiency of the Proposed Venue

Although Plaintiffs do not consent to the requested transfer, Plaintiffs concede that venue of this action is proper in the Northern District of Illinois. (Doc. 16, p. 4). Nonetheless, the Court must independently verify that the Northern District of Illinois has jurisdiction and offers a proper venue. *See Delorenzo v. HP Enter. Servs., LLC*, 79 F. Supp. 3d 1277, 1280 (M.D. Fla. 2015) (citation omitted) (noting that, absent unanimous consent to transfer, § 1404(a) requires a proposed transferee court to have both personal and subject matter jurisdiction in addition to offering a proper venue).

The Northern District of Illinois has personal jurisdiction over United because its principal place of business is in Chicago, Illinois. (Doc. 1, ¶ 7). Moreover, under 28 U.S.C. § 1331, the Northern District of Illinois has subject matter jurisdiction over Plaintiff's Title VII claims because they arise under the laws of the United States. (*Id.* ¶¶ 34–50). Accordingly, under 28 U.S.C. § 1367, the Northern District of Illinois has supplemental jurisdiction over Plaintiff's FCRA claims. (*Id.* ¶¶ 51–74).

5

Finally, because "a substantial part of the events or omissions giving rise to the [action] occurred" in the Northern District of Illinois, venue is proper under 28 U.S.C. § 1391. *See* discussion *infra* Section III.B.4. This action arises from United's COVID-19 Policy and Reasonable Accommodation Policy (collectively, the "**policies**"), both of which were developed and implemented in Illinois. (*See* Doc. 1; Doc. 13, p. 9). This action also arises from United's decisions as to Plaintiff's requested accommodation, which were made in Illinois. (*Id.*).

Thus, this "case could have been filed" in the Northern District of Illinois because it has jurisdiction and offers a proper venue. *See Nat'l Tr. Ins. Co.*, 223 F. Supp. 2d at 1241–42. As such, the first step of the § 1404(a) analysis is satisfied. *See id.*

## B. The Interests of Convenience and Justice

As an initial matter, the Court notes that Plaintiff's Response lacks any citation to the record or to supporting legal authority. (*See* Doc. 16). Accordingly, the Court is not obligated to address Plaintiff's arguments. *See W. Sur. Co. v. Steuerwald*, No. 16-61815-CV, 2017 WL 5248499, at *2 (S.D. Fla. Jan. 17, 2017) ("It is axiomatic that arguments not supported and properly developed are deemed waived.")[1]; *see also U.S. Steel Corp. v. Astrue*, 495 F.3d 1272, 1287 n.13 (11th Cir. 2007) (noting that the court need not consider "perfunctory and underdeveloped" arguments and that such arguments are waived); *Resolution Tr. Corp. v. Dunmar*

---

[1] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007).

6

*Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). Nonetheless, the Court assesses each *Manuel* factor in turn. *See Manuel*, 430 F.3d at 1135 n.1.

   1.   *The Convenience of Witnesses*

United asserts that all the witnesses involved in implementing United's policies and processing Plaintiff's accommodation requests are in Illinois. (Doc. 13, p. 9). In response, Plaintiff argues that United fails to "demonstrate the materiality of any testimony that these purported witnesses would provide." (Doc. 16, p. 6). Plaintiff further argues that because the purported witnesses are employed by United, United can require their presence in Florida. (*Id.*).

While United does not indicate what the witnesses' testimony will be, the Court finds that the witnesses are "key" witnesses. *See Nat'l Tr. Ins. Co.*, 223 F. Supp. 2d at 1243. "A witness is key if his or her testimony is likely to be significant enough that the [witness's] presence would be necessary at trial." *Id.* (citations omitted). Here, the purported witnesses are the employees involved with United's policies, procedures, and decisions. (Doc. 13, p. 9). Considering the employees were involved with the facts underlying Plaintiff's claims, it is likely their "presence would be necessary at trial." (*Id.*); *see Nat'l Tr. Ins. Co.*, 223 F. Supp. 2d at 1243 (citations omitted). Accordingly, the Court finds that these employees are "key" witnesses. *See id.*

Moreover, the Court is not persuaded by Plaintiff's argument that United can require these employees' presence in Florida. (Doc. 16, p. 6). Although the convenience of witnesses is "diminished" when they are employees of a party, the

fact that employee witnesses can be compelled to testify does not dispose of the inconvenience to them altogether. *See Mason v. Smithkline Beecham Clinical Labs.*, 146 F. Supp. 2d 1355, 1361–62 (S.D. Fla. 2001). Consequently, this factor weighs in favor of transfer.

> 2. *The Location of Relevant Documents and Ease of Access to Sources of Proof*

United represents that all records and documents related to this case are located at United's principal place of business in Chicago, Illinois. (Doc. 13, pp. 9–10). In response, Plaintiff asserts that United "has failed to provide specific evidence that the location of its records is an inconvenience for it." (Doc. 16, p. 6).

Plaintiff seemingly misconstrues this factor. (*See id.*). In assessing this second factor, the Court looks to the "ease of access to sources of proof." *See Manuel*, 430 F.3d at 1135 n.1. Here, United asserts that the Northern District of Illinois, where all its records and documents are located, is a preferable venue for ease of access to these sources of proof. (Doc. 13, pp. 9–10). United need not meet Plaintiff's misconstrued threshold of demonstrating "specific evidence" of "inconvenience." (Doc. 16, p. 6). In any event, the Court finds that it will be easier to access the sources of proof in the Northern District of Illinois than in the Middle District of Florida. Thus, this factor weighs in favor of transfer.

> 3. *The Convenience of the Parties*

United posits that "Plaintiff would only be required to transport himself to the Northern District of Illinois as part of litigation," whereas United "would be

8

required to arrange the transport of numerous witnesses and corporate representatives across the country on multiple occasions during the course of litigation, including potentially for deposition, mediation, and trial." (Doc. 13, p. 10). Plaintiff does not directly address this factor. (*See* Doc. 16). At most, Plaintiff asserts that his counsel are not admitted to practice in the Northern District of Illinois, and thus, a transfer would be an "extremely heavy burden on him, especially if he were not able to find local counsel to take on his representation." (*Id.* at p. 2).

Considering the logistical challenges United would face in coordinating their witnesses and corporate representatives throughout the entirety of this action, this factor weighs in favor of transfer. (*See* Doc. 13, p. 10). Further, the Court is not persuaded by Plaintiff's argument because his counsel can seek to appear *pro hac vice* in the Northern District of Illinois. *See Meterlogic, Inc. v. Copier Sols, Inc.*, 185 F. Supp. 2d 1292, 1304 (S.D. Fla. 2002) ("Of the factors considered on a transfer motion, the location of counsel is entitled to the least consideration."). Notably, Plaintiff's lead counsel is proceeding *pro hac vice* before this Court.

    4.  *The Locus of Operative Facts*

United avers that because its decisions regarding its policies and Plaintiff's accommodation request occurred in Chicago, Illinois, the Northern District of Illinois is the locus of operative facts. (Doc. 13, pp. 10–11). Plaintiff posits that the Middle District of Florida is the locus of operative facts because Plaintiff's employment with United was based in Orlando, Florida. (Doc. 16, pp. 4–5).

9

Moreover, Plaintiff avers that he was required to comply with United's policies and communicated his objections to such policies in Orlando, Florida. (*Id.*).

The Court finds that both the Northern District of Illinois and the Middle District of Florida are loci of operative facts in this action. While United's policies and procedures at issue were developed and implemented in Chicago, Illinois, the individualized application of these policies and procedures to Plaintiff occurred in Orlando, Florida. (*Id.*; Doc. 13, p. 2). United developed its policies, implemented its procedures, and processed Plaintiff's accommodation request in the Northern District of Illinois. (Doc. 13, p. 2). United enforced these policies and procedures as to Plaintiff and his employment with United in the Middle District of Florida. (Doc. 16, pp. 4–5). Considering there are two loci of operative facts underlying Plaintiff's claims, the Court finds this factor to be neutral. *See Combs v. Fla. Dep't of Corrs.*, 461 F. Supp. 3d 1203, 1211–13 (N.D. Fla. 2020) (collecting cases) ("When there are multiple loci of operative facts and no single locus is primary in this respect, courts treat this factor neutral in the Section 1404(a) analysis.").

     5.    *The Availability of Process to Compel Unwilling Witnesses*

The parties do not present any convincing argument as to this factor, nor do they identify any unwilling witnesses. (*See* Docs. 13, 16). The Court thus finds this factor to be neutral in its analysis. *See Fruitstone v. Spartan Race, Inc.*, 464 F. Supp. 3d 1268, 1281 (S.D. Fla. 2020) (citing *Legg v. Quicken Loans, Inc.*, No. 14-61116-CIV, 2015 WL 13753742, at *3 (S.D. Fla. Mar. 6, 2015) (determining that the fifth factor "does not weigh in either party's favor at this early stage" where

10

"[n]either party has identified any witnesses that are potentially unwilling to participate at trial and thus the availability of process to compel the attendance of unwilling witnesses is a non-issue")).

### 6. *The Relative Means of the Parties*

United concedes that "its relative means are greater than Plaintiff's." (Doc. 13, p. 12). United, however, asserts that the burden presented by forcing it to "require all witnesses to travel across the country for trial significantly out ways [sic] the minimal burden presented" to Plaintiff. (*Id.*). Although Plaintiff does not address this factor, he does represent that he is financially burdened because he "has not been able to replace all the income he lost" since his employment was terminated. (Doc. 16, p. 2).

The means of United, a large corporation, are likely superior to Plaintiff's, an individual. However, no showing has been made that litigating in the Northern District of Illinois would impose an "undue hardship" upon Plaintiff. *See Combs*, 461 F. Supp. 3d at 1213 (citing *Hernandez v. Graebel Van Lines*, 761 F. Supp. 983, 989 (E.D.N.Y. 1991) (finding that the plaintiff failed to establish an "undue hardship" in a case involving a corporate defendant and an individual plaintiff)). Considering this factor seemingly fails to impact either party, the Court finds it neutral in its analysis. *See Osgood v. Disc. Auto Parts, LLC*, 981 F. Supp. 2d 1259, 1266 (S.D. Fla. 2013) (finding this factor neutral as to an individual plaintiff suing

11

a limited liability company defendant because "many options are now available to the parties and the courts for economical and convenient resolution of disputes").

### 7. *The Forum's Familiarity With the Governing Law*

United asserts that this factor is "not relevant" to the Court's analysis because "both courts are presumed to be equally familiar with the substantive discrimination laws governing all the claims asserted in this action." (Doc. 13, pp. 12–13). Specifically, United cites to legal authority supporting the premise that "the FCRA was patterned after Title VII, and case law interpreting Title VII applies to cases arising under the FCRA." (*Id.* at p. 13 (first citing *Telfair v. Fed. Express Corp.*, 934 F. Supp. 2d 1368, 1374 n.1 (S.D. Fla. 2013); and then citing *Wood v. Fla. Atl. Univ. Bd.*, 432 F. App'x 812, 816 (11th Cir. 2011))). Plaintiff argues that this Court is more likely to be familiar "with the fact that the FCRA states that accommodations 'shall' be issued specific to the COVID-19 vaccinations." (Doc. 16, p. 7 (citing FLA. STAT. § 381.00317)).

The only claims specific to Florida law in this case are those arising under the FCRA. (*See* Doc. 1). As United emphasized, the FCRA is modeled after Title VII, a federal statute that both forums are familiar with. (Doc. 13, pp. 12–13). Moreover, "federal judges routinely apply the law of a State other than the State in which they sit." *See Atl. Marine Const. Co.*, 571 U.S. at 67–68. Lastly, Plaintiff fails to identify

12

any "exceptionally arcane features" of the FCRA.[2] *See id.*; (Doc. 16, p. 7). Consequently, this factor is neutral as to transfer.

### 8. *The Weight Accorded to a Plaintiff's Choice of Forum*

United argues that Plaintiff's choice of forum is not entitled to much weight because "there is no material connection between the [Plaintiff's choice of] forum and the events underlying the cause of action." (Doc. 13, p. 7 (first citing *Martinez v. Shulkin*, No. 1:17cv128-MW/CAS, 2017 WL 10821303, at *1 (N.D. Fla. Aug. 2, 2017); and then citing *Merswin v. Williams Cos., Inc.*, No. 1:08-CV-2177-TWT, 2009 WL 249340, at *6 (N.D. Ga. Jan. 30, 2009))). While Plaintiff does not present individualized argument as to this factor, Plaintiff generally asserts that United fails to meet its burden of overcoming Plaintiff's choice of forum. (Doc. 16, p. 7).

Ordinarily, a "plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) (citation omitted). United correctly posits that when there is "no material connection" between a plaintiff's choice of forum and "the events underlying the cause of action," a plaintiff's choice of forum carries less

---

[2] The Court is not impressed by Plaintiff's assertion that this Court is more likely to be familiar with an alleged "nuance" in the FCRA. (Doc. 16, p. 7). Plaintiff incorrectly asserts that "the FCRA states that accommodations 'shall' be issued specific to the COVID-19 vaccinations." (*Id.*). In making this misrepresentation, Plaintiff cites to Florida Statute § 381.00317, which is a public health provision related to COVID-19 vaccination mandates. (*Id.*). Plaintiff fails to explain how this separate Florida statue equates to a nuance in the FCRA itself. (*See id.*). Moreover, Plaintiff fails to explain how this separate Florida statute affects the Court's FCRA analysis. (*See id.*). Consequently, Plaintiff's assertion fails. *See e.g., U.S. Steel Corp.*, 495 F.3d at 287 n.13 (noting that the court need not consider "perfunctory and underdeveloped" arguments and that such arguments are waived).

13

weight. (Doc. 13, p. 7). However, as explained above, there is a material connection between Plaintiff's choice of forum and the events underlying the cause of action. *See* discussion *supra* Section III.B.4. Thus, the Court disagrees with United's assertion that there is "no material connection here." (Doc. 13, p. 7). Nonetheless, there is also a material connection between the transferee forum and the events underlying the cause of action. As such, the Court accords the due deference to Plaintiff's choice of forum, but as discussed herein, this deference is "clearly outweighed by other considerations." *See Robinson,* 74 F.3d at 260.

        9.     *Trial Efficiency and the Interests of Justice, Based on the Totality of the Circumstances*

United represents that there are at least six similar cases pertaining to United's COVID-19 Policy (the "**related cases**") pending before the Honorable Judge Matthew F. Kennelly of the Northern District of Illinois. (Doc. 13, pp. 5–6, 13). United therefore asserts that a transfer of the case would benefit judicial economy. (*Id.*). In response, Plaintiff asserts that this "case is a stand-alone case, and the transfer will not provide any additional, measurable efficiencies." (Doc. 16, p. 4). Specifically, Plaintiff argues that the related cases are factually distinguishable. (*Id.* at pp. 4–5). Plaintiff further asserts that the fact that there is a single judge presiding over the related cases is irrelevant because there is a jury demand in this case. (*Id.*).

The Court agrees with United that a transfer would benefit judicial economy. Although the related cases may factually differ from this case, there is a substantial

similarity between the cases that would, indeed, provide additional, measurable efficiencies. First, each related case concerns United's COVID-19 Policy.[3] Second, similar to this case, several of the related cases address claims brought under Title VII.[4] Third, having the same judge—who is familiar with United's policies—preside over these cases will promote judicial efficiency and consistency. As such, the Court finds that based on the totality of the circumstances, the factor of trial efficiency and the interests of justice heavily weighs in favor of transfer.

In sum, United has met its burden to show that the interests of convenience and justice warrant transferring this case to the Northern District of Illinois.

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Defendant's Motion to Transfer Venue (Doc. 13) is **GRANTED**. The Clerk of Court is **DIRECTED** to transfer this case to the United States District Court for the Northern District of Illinois, Eastern Division for all further proceedings.

**DONE AND ORDERED** in Orlando, Florida on September 30, 2024.

---

[3] *Wickstrom et al. v. United Airlines Master Exec. Council et al.*, No. 1:23-cv-02631 (N.D. Ill. filed Sept. 7, 2022); *Anderson et al. v. United Airlines, Inc. et al*, No. 1:23-cv-00989 (N.D. Ill. filed Feb. 17, 2023); *Engstrom et al. v. Air Line Pilots Ass'n, Int'l et al.*, No. 1:23-cv-15792 (N.D. Ill. filed Nov. 16, 2022); *Caraffa v. United Airlines, Inc.*, No. 1:24-cv-01250 (N.D. Ill. filed Sept. 15, 2023); *Oka v. United Airlines, Inc. et al.*, No. 1:23-cv-15793 (N.D. Ill. filed Oct. 3, 2023); *Hassett v. United Airlines Inc.*, No. 1:23-cv-14592 (N.D. Ill. filed Feb. 11, 2023).

[4] *See supra* note 3.

15

_____
PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties